1   **WO**                     NOT FOR PUBLICATION

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9   Thomas Sidney McInvale,                | No. CV-15-08115-PCT-JJT

10                      Plaintiff,          | **ORDER**

11  v.

12  Carolyn W. Colvin,

13                      Defendant.

14

15          At issue is the denial of Plaintiff Thomas Sidney McInvale's Application for

16  Disability Insurance Benefits (DIB) by the Social Security Administration under the

17  Social Security Act. Plaintiff filed a Complaint on June 29, 2015, asking this Court to

18  review the denial of his benefits. (Doc. 1.) The Court has reviewed the briefs (Docs. 17,

19  19, 23) as well as the Administrative Record (Doc. 12, R.) and now reverses the

20  Administrative Law Judge's decision (R. at 11–26) as upheld by the Appeals Council

21  (R. at 1–6).

22  **I.    BACKGROUND**

23          Plaintiff filed an application for DIB in May 2011, initially alleging disability

24  beginning March 1, 2009, and his date last insured is September 30, 2010. (R. at 14, 282.)

25  After Plaintiff's application was denied initially and on reconsideration, Plaintiff

26  requested a hearing, which an Administrative Law Judge (ALJ) held on August 21, 2013.

27  (R. at 27–51.) On November 1, 2013, the ALJ issued a decision denying Plaintiff's

28  application. (R. at 11–26.) After the ALJ denied Plaintiff's request, the Appeals Council

1    (AC) denied Plaintiff's request for review of the ALJ's decision on April 30, 2015,

2    making the ALJ decision the final decision of the Commissioner of Social Security. (R. at

3    1–6.) The present appeal followed.

4         **A.    Medical Evidence**

5         The Court has reviewed the medical evidence in its entirety and provides a short

6    summary here. Plaintiff suffers from degenerative disc disease in the cervical and lumbar

7    spines, neuropathy in the lower extremities, sleep apnea, and obesity. (*See, e.g.*, R. at 16,

8    492, 508.) Plaintiff reported experiencing back pain as early as 2008 (R. at 429), and his

9    pain has progressively worsened (R. at 372, 388).

10        In February 2008, Dr. Arthur Ford reviewed Plaintiff's MRIs and found they

11   revealed "fairly severe lumbar degenerative disc disease and lumbar facet disease, as well

12   as cervical degenerative disc disease." (R. at 429.) In May 2008, Plaintiff had an MRI of

13   the cervical spine that indicated a partial fusion of the C4 and C5 vertebrae and very mild

14   degenerative disc disease throughout the cervical spine. (R. at 521.) In August 2010,

15   Plaintiff had an MRI of the lumbar spine that indicated the following: bilateral L5

16   spondylolysis with grade I spondylolisthesis at L5-S1; degenerative disc disease and

17   osteoarthritis throughout the lumbar spine; small posterior disc bulges at multiple lumbar

18   levels; and no evidence of spinal stenosis. (R. at 520.)

19        From 2008 to 2012, Plaintiff received routine lumbar epidural steroid nerve blocks

20   and cervical steroid nerve blocks for his chronic low back pain, lumbar degenerative disc

21   disease, and sacroiliitis. (R. at 435–99.) Plaintiff stopped this treatment from

22   approximately July 2008 to October 2009 before returning to treatment because of

23   increased pain. (*See* R. at 453–56.) After receiving treatment in 2009, Plaintiff reported

24   not having significant pain (*see* R. at 457, 459), but generally, the epidural block

25   injections provided Plaintiff with only short-term relief (*see* R. at 490, 433, 471, 496).

26   Dr. Ford administered and oversaw Plaintiff's epidural injections and frequently noted

27   that because of Plaintiff's obesity and related pain, there was minimal treatment available

28   and results would be limited. (*See, e.g.*, R. at 451, 485, 494.) On one occasion in 2008,

- 2 -

1    Dr. Ford stated Plaintiff's options for pain management alternatives were "pretty grim
2    because of his weight," and that spine doctors would not even consider Plaintiff because
3    of his weight. (R. at 445.)

4         Plaintiff also experienced pain in his right shoulder beginning around 2009, which
5    was exacerbated when he fell in 2011, resulting in a full tear to his rotator cuff. (R. at
6    343.) After review of x-rays and MRIs and administration of injection treatments for
7    pain, Plaintiff underwent rotator cuff surgery in September 2011. (R. at 357.) Thereafter,
8    he felt fully recovered with regard to his right shoulder function. (R. at 376, 380.)

9         Plaintiff continued to complain of progressive lower back pain through 2012.
10   (R. at 376.) X-rays of the cervical and lumbar spine in June 2012 showed significant
11   issues in the cervical spine, including degenerative disc disease, degenerative
12   spondylosis, and uncovertebral arthrosis (osteoarthritis affecting certain joints along the
13   cervical vertebra), and significant issues in the lumbar spine, including spondylolisthesis
14   and advanced degenerative disc disease in nearly the entire lumbar spine. (R. at 377.) In
15   assessments from 2012 by Physician Assistant Kirk Butler at Flagstaff Center for Bone
16   and Joint Disorders, where Plaintiff frequently obtained treatment, PA Butler determined
17   Plaintiff had progressive lumbosacral pain with sensory radiculopathy and degenerative
18   spondylolisthesis with severe bilateral foraminal stenosis and degree of dynamic
19   instability. (R. at 374, 376–78.) PA Butler initially recommended continued lumbar
20   corticosteroid injections, physical therapy, and weight loss. (R. at 375, 378.) The
21   injection treatments only provided Plaintiff with short-term relief, however, and PA
22   Butler and Dr. John Hall, also at Flagstaff Center for Bone and Joint Disorders,
23   recommended Plaintiff undergo surgery. (R. at 373–75, 378.)

24        Plaintiff took various medications for his pain, inflammation and muscle spasms
25   including OxyContin, Tramadol, Voltaren, Ultram, Soma, Naproxen, and Ibuprofen.
26   (R. at 434.) Plaintiff also received physical therapy treatment in 2012. (R. at 382–90.)

27

28

1

2

### B.     Hearing Testimony

#### 1.     Plaintiff's Testimony

At Plaintiff's hearing before the ALJ on August 21, 2013, Plaintiff testified as to his pain. Plaintiff stated that overall his pain in 2010 was moderately severe and worsened with increased activity. (R. at 39.) During the average workday hours, Plaintiff needed to spend at least three quarters of the day reclining. (R. at 39.) He stated that in 2010, he could not stand for more than 10 to 15 minutes without extreme pain, and could not stand for a more than an hour total in an eight-hour workday. (R. at 34, 41–42.) He could not sit for more than two hours in a workday. (R. at 34, 41.) Plaintiff stated that his low back pain was constant and sometimes the pain went down to his legs and feet. (R. at 37.) He stated he received epidural injections for his back, but that the shots did not help him. (R. at 35.) He also explained he later had spinal fusion surgery and received physical therapy for his back pain. (R. at 35.) While Plaintiff experienced some relief from his back pain after his surgery in 2013, his back pain returned at another area. (R. at 39–40.)

Plaintiff testified that after experiencing constant pain in 2010, he underwent a nerve conduction study in January 2011 that showed bilateral lower extremity peripheral neuropathy. (R. in 38.) He experienced pain in his feet and low back due to neuropathy, and doctors instructed him to elevate his feet to help with the pain. (R. at 40, 42.)

With regard to daily activities, Plaintiff testified he was able to help around the house with cooking and cleaning once or twice a week, that he cleaned his toilet every day, and that he "gather[ed] up laundry" but his mother did the laundry. (R. at 32.) Plaintiff also testified that in 2009 and 2010, he drove to his church about once a month, which was a 50 mile roundtrip drive. (R. at 33.)

#### 2.     Vocational Expert Testimony

Troy Scott, a vocational expert (VE), also testified before the ALJ at the August 21, 2013 hearing. (R. at 28, 45–50.) When the ALJ asked the VE whether a hypothetical individual – one with Plaintiff's age, education, and work experience, who can work at the light level of exertion, can stand and walk four hours during an eight-hour day, can

- 4 -

1   occasionally climb ladders, ropes, or scaffolds, and occasionally perform other

2   movements – could perform any of Plaintiff's past work, the VE said "no." (R. at 47.)

3   The VE did identify other occupations that would be available at the sedentary and light

4   exertional levels. (R. at 48.) In a second hypothetical posed to the VE, the ALJ asked

5   whether, assuming the same limitations as the first hypothetical, but adding that the

6   individual would need to elevate his feet on an at-will basis throughout the day, would

7   any jobs be available. (R. at 48.) The VE responded that the additional limitation would

8   preclude all jobs available under the first hypothetical. (R. at 48.)

9        Plaintiff's counsel asked the VE whether his opinion under the first hypothetical

10   the ALJ posed would be impacted if added to that hypothetical was an individual's

11   moderately severe pain that made the individual off task for 10 to 12 percent on average.

12   (R. at 49.) The VE responded that under those circumstances, all work would be

13   precluded, and that assuming a person needed to lie down as frequently as Plaintiff

14   testified to, that would also preclude all work. (R. at 49.)

15       **C.    The ALJ's Opinion**

16        ALJ James P. Nguyen issued an opinion dated November 1, 2013, in which he

17   concluded Plaintiff was not disabled under sections 216(i) and 223(d) of the Social

18   Security Act. (R. at 22.) The ALJ began his analysis by stating his finding that Plaintiff

19   met the insured status requirement and had not engaged in substantial gainful activity

20   during the period from his alleged onset date through his date last insured of

21   September 30, 2010. (R. at 16.) The ALJ then listed degenerative disc disease in the

22   cervical spine and lumbar spine, neuropathy in the lower extremities, rotator cuff tear,

23   obstructive sleep apnea, and obesity as severe impairments afflicting Plaintiff. (R. at 16.)

24        Proceeding with the five-step inquiry, the ALJ found that the impairments or

25   combination of impairments did not meet the severity of symptoms to meet or equal any

26   of the medical listings. (R. at 17.) The ALJ then stated his finding that Plaintiff had the

27   residual functional capacity (RFC) to perform light work as defined in 20 CFR

28

404.1567(b) with some exceptions, including that Plaintiff can stand and/or walk four hours during an eight-hour day and he can occasionally climb ramps and stairs. (R. at 17.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms was not entirely credible. (R. at 18.) The ALJ found Plaintiff's and his mother's allegations regarding the severity of Plaintiff's symptoms were not fully credible because they were greater than expected in light of the objective evidence of record of conservative treatment including epidural blocks, joint injections, pain medications and use of CPAP machine. (R. at 18.)

After determining Plaintiff's RFC, the ALJ found Plaintiff could not perform any past relevant work (R. at 20), but there were jobs in significant numbers in the national economy that Plaintiff could perform (R. at 21).  The ALJ thus found Plaintiff was "not disabled." (R. at 22.)

## II.    LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

1   burden of proof on the first four steps, but the burden shifts to the Commissioner at step

2   five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ

3   determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

4   § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step

5   two, the ALJ determines whether the claimant has a "severe" medically determinable

6   physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not

7   disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's

8   impairment or combination of impairments meets or medically equals an impairment

9   listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404 (Listing of Impairments). 20

10  C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.*

11  If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's

12  residual functional capacity and determines whether the claimant is still capable of

13  performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not

14  disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step,

15  where he determines whether the claimant can perform any other work based on the

16  claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §

17  404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

18  *Id.*

19  **III.    ANALYSIS**

20          Plaintiff argues that the ALJ committed legal error by: (1) rejecting Plaintiff's

21  symptom testimony in the absence of specific, clear, and convincing reasons supported

22  by substantial evidence; (2) failing to consider the record as a whole when determining

23  Plaintiff was disabled; and (3) failing to provide any basis for the determination of

24  Plaintiff's work capacities. (Doc. 17, Pl's Br. at 1.)

25          **A.    The ALJ Erred By Rejecting Plaintiff's Symptom Testimony**

26          Plaintiff argues that the ALJ erred by failing to provide clear and convincing

27  reasons for rejecting portions of Plaintiff's symptom testimony. (Pl.'s Br. at 13.) The ALJ

28  discredited Plaintiff's symptom testimony because he found it was not consistent with the

1  objective evidence of record, which showed, in the ALJ's opinion, conservative

2  treatment. (R. at 18.) It also appears the ALJ found Plaintiff's testimony as to his daily

3  activities was not consistent with his alleged symptoms. (R. at 18.) Finally, the ALJ noted

4  there was no reliable medical source statement supporting the extent of Plaintiff's alleged

5  functional limitations. (R. at 18.)

6  　　　　"[U]nless an ALJ makes a finding of malingering based on affirmative evidence

7  thereof, he or she may only find an applicant not credible by making specific findings as

8  to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec.*

9  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "The clear and convincing standard is the

10  most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*

11  *Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). When evaluating a claimant's pain testimony

12  where the claimant has produced objective medical evidence of an underlying

13  impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a

14  lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v.*

15  *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings are insufficient; rather,

16  the ALJ must identify what testimony is not credible and what evidence undermines the

17  claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

18  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

19  　　　　Though the ALJ has provided several reasons for discrediting Plaintiff's

20  testimony, none satisfies the exacting clear and convincing standard that applies here

21  where the ALJ found no evidence of malingering. For example, the ALJ found Plaintiff's

22  treatment "limited to epidural blocks, joint injections, pain medications, and use of CPAP

23  machine" was conservative. (R. at 18.) Plaintiff's doctor administering some of this

24  treatment, however, frequently noted that because of Plaintiff's obesity, minimal

25  treatment was available because his weight initially precluded him from surgery or other

26  more significant treatment. (*See, e.g.*, R. at 445, 451, 485, 494.)

27  　　　　In addition, after medical professionals determined Plaintiff's chronic conditions

28  persisted and were not alleviated by epidural blocks and injections, they recommended

1    surgery, which Plaintiff underwent. (R. at 373–75, 378.) Although this determination and

2    the surgery took place after Plaintiff's date last insured, Plaintiff's chronic lower back

3    issues, including degenerative disc disease, were documented prior to the date last

4    insured and continually worsened. (*See* R. at 435–46, 508, 517, 520–21.) "While the ALJ

5    must consider only impairments (and limitations and restrictions therefrom) that

6    [Plaintiff] had prior to the DLI [date last insured], evidence post-dating the DLI is

7    probative of [Plaintiff's] pre-DLI disability." *Turner v. Comm'r of Social Security,* 613

8    F.3d 1217, 1228–29 (9th Cir. 2010). It is not evident that the ALJ considered Plaintiff's

9    doctor's notations that Plaintiff was initially barred from more drastic treatment due to

10   other risk factors and that Plaintiff later received more serious treatment after

11   conservative treatment was ineffective. Accordingly, further development of the record is

12   necessary.

13           The ALJ also reviewed Plaintiff's diagnostic test results. The ALJ examined

14   results dated August 2010 that revealed various issues including spondylosis,

15   spondylolisthesis, degenerative disc disease, and osteoarthritis of the lumbar spine. (R. at

16   18, 520.) However, the ALJ noted the lack of evidence of spinal stenosis, without

17   explaining why that lack of evidence supports a finding that Plaintiff is not credible,

18   especially in light of the evidence of Plaintiff's other issues. (*See* R. at 18.) The ALJ goes

19   on to include degenerative disc disease and neuropathy as severe impairments during the

20   relevant period, but does not explain why the medical record does not support Plaintiff's

21   symptom testimony or why the testimony lacked credibility. (R. at 18–19.) Thus, the

22   ALJ's review of the medical record does not constitute a "clear and convincing" reason

23   for discrediting Plaintiff's testimony. *See Moore*, 278 F.3d at 924.

24           The ALJ relies on Plaintiff's testimony regarding his daily activities to support his

25   finding that Plaintiff is not credible. He notes that Plaintiff testified that he cooks, gathers

26   laundry, and cleans his toilet every day. (R. at 18.) The ALJ erred in finding that

27   Plaintiff's daily activities, if performed in the manner that Plaintiff described, are

28   inconsistent with the pain-related impairments that Plaintiff described in his testimony.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). The ALJ failed to develop and clarify the record as to the extent to which Plaintiff takes breaks when engaging in such activities and how long the activities take. If, for example, Plaintiff cooks in twenty minute increments once or twice a week, any abilities he employs in cooking for such a short period of time are not likely transferable to the work environment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). When describing his cooking, Plaintiff stated he could cook "once or twice a week," and with regard to laundry, he stated his mother did the laundry, though he could do so if needed. (R. at 32.) Plaintiff's statements in context further suggest that his abilities may not be transferable to the work environment and that his statements are not inconsistent with his symptom testimony, especially as to walking and standing limitations.

16
17
18
19
20
21
22
23
24
25
26

Finally, while there is not a medical source statement endorsing the extent of Plaintiff's alleged functional limitations, the ALJ fails to point to a statement that contradicts and makes Plaintiff's symptom testimony not credible in any way. It is not proper for the ALJ to find Plaintiff not credible solely due to a lack of a medical source statement. To the extent the ALJ relied on Plaintiff's intermittent reports of relief from steroid nerve blocks and epidural steroid injections, there is no evidence that Plaintiff had long-term relief from such treatment, and it is not inconsistent for Plaintiff to have experienced and reported short-term relief while still having long-term pain. Also, to the extent the ALJ found Plaintiff's failure to lose weight made his testimony not credible, such a finding violates a Social Security Ruling and goes against the case law in this Circuit. *See Orn*, 495 F.3d at 636.

27
28

Accordingly, the ALJ's basis for discrediting Plaintiff's testimony were either improper or require further factual development. *See Robins*, 466 F.3d at 883.

1

2

**B.      The ALJ Must Consider the Record as a Whole When Determining Whether Plaintiff was Disabled**

3

4

5

6

7

Plaintiff argues that the ALJ explicitly refused to consider evidence after Plaintiff's date last insured when evaluating the severity of Plaintiff's condition. (Pl.'s Br. at 21.) Defendant contends the ALJ did not explicitly refuse to consider such evidence, but only stated he would not "discuss" certain evidence. (Doc. 19, Def.'s Br. at 14.) The disputed language from the ALJ's Opinion is:

8

9

10

11

> [T]he claimant underwent a rotator cuff repair in 2011 and lumbar fusion in 2013 (Ex. 3F and Testimony). However, those surgeries occurred after the claimant's date last insured. As such, that evidence is not discussed within this decision, and any related impairments status-post those surgeries are not considered medically determinable impairments.

12

13

14

15

16

17

18

19

20

(R. at 16.) Although the ALJ uses the word "discuss" rather than explicitly stating he would not *consider* the evidence, the Court does not find this semantic difference precludes the possibility that by not discussing the evidence, the ALJ also did not consider the evidence in making his determination. Evidence that post-dates Plaintiff's date last insured may be probative of his impairments prior to his date last insured. *See, e.g.*, *Turner,* 613 F.3d at 1228–29; *Lester*, 81 F.3d at 832 ("medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition") (citation omitted).

21

22

23

24

25

26

To the extent the ALJ did not consider evidence that post-dates Plaintiff's date last insured, the ALJ shall consider such evidence on remand. Because Plaintiff's impairments were determined prior to his date last insured and he began conservative treatment during that time, his later treatment, including surgery after successive failures of conservative treatment, is evidence that post-dates his date last insured but may be probative of his pre-expiration condition. *See Lester*, 81 F.3d at 832.

27

28

1
2

### C.   The ALJ Must Develop the Record in Determining Plaintiff's Work Capacities

3    Plaintiff argues that the ALJ erred because he did not articulate any rationale for

4 his determination of Plaintiff's RFC that Plaintiff could perform light work. (Pl.'s Br. at

5 22.) Based on the Court's decision above, on remand, the ALJ must develop the record as

6 to Plaintiff's testimony and consider medical evidence that post-dates Plaintiff's date last

7 insured. After such steps, the ALJ will need to make a new determination of Plaintiff's

8 RFC, and therefore the Court does not review the ALJ's previous determination of

9 Plaintiff's RFC.

10   ### D.   The Credit-As-True Rule Does Not Apply

11   Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in

12 remand of Plaintiff's case for payment of benefits rather than remand for further

13 proceedings. (Pl.'s Br. at 13.) Specifically, Plaintiff states that had the ALJ not rejected

14 Plaintiff's symptom testimony, he should be entitled to benefits because the VE testified

15 that a person with Plaintiff's reported symptoms would be unable to perform any work.

16 (Pl.'s Br. at 13, 20–21.)

17   The credit-as-true rule only applies in cases that raise "rare circumstances" that

18 permit the Court to depart from the ordinary remand rule under which the case is

19 remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec.*

20 *Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when

21 three elements are present. First, the ALJ fails to provide legally sufficient reasons for

22 rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there

23 must be no outstanding issues that must be resolved before a determination of disability

24 can be made, and further administrative proceedings would not be useful. *Id*. at 1101.

25 Further proceedings are considered useful when there are conflicts and ambiguities that

26 must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the

27 relevant testimony credible as a matter of law . . . and then determine whether the record,

28

1    taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the]

2    proceeding.'" *Id*. (citations omitted).

3         In this case, the ordinary remand rule, not the credit-as-true rule, applies. Because

4    the ALJ found Plaintiff's symptom testimony not credible and did not fully develop the

5    record in support of his decision to reject Plaintiff's testimony, this case still involves

6    evidentiary conflicts that must be resolved, and there is still uncertainty as to the outcome

7    of the proceeding.

8         **IT IS THEREFORE ORDERED** reversing the decision of the Administrative

9    Law Judge (R. at 11–26) as upheld by the Appeals Council (R. at 1–6). The Court

10   remands this matter for further proceedings as to Plaintiff's symptom testimony and

11   evidence that post-dates Plaintiff's date last insured.

12        **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment

13   accordingly and close this matter.

14        Dated this 3rd day of June, 2016.

15

16   _____

17   Honorable John J. Tuchi
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28